**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MARK BERGER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.  4:23-CV-01227-HEA |
| | ) | |
| LELAND DUDEK,[1] | ) | |
| Acting Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court for judicial review of an adverse ruling by the Social Security Administration as set forth by an Administrative Law Judge ("ALJ") on July 6, 2023. (Tr. 1269-83).  A summary of the record is presented in the parties' briefs and is repeated here only to the extent necessary.  Upon review of the record and for the following reasons, the decision of the Commissioner will be reversed, and the matter remanded.

### *I.  Procedural History*

In January 2018, Plaintiff protectively filed applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-434, 1381-1385.  (Tr. 265-74).  Plaintiff, who was born on August 3, 1965, alleged he had been unable to work as a carpenter since April 17, 2016, due to

---

[1] Leland Dudek became the Acting Commissioner of Social Security on February 16, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Leland Dudek should be substituted for Martin O'Malley as the defendant in this suit.  No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

fused neck, arthritis, pinched brain stem, numbness in arms and hands, and pain.  (Tr. 295-96).

Plaintiff's alleged onset date was later amended to August 30, 2017, because part of the alleged

period of disability had been previously adjudicated.  (Tr. 86, 1270).  Plaintiff's application was

denied on initial consideration, and he requested a hearing before an ALJ.  (Tr. 195-204).

Following a July 2019 hearing, the ALJ issued an unfavorable decision, which was affirmed on

appeal.  (Tr. 1-7, 85-99, 106-141).  Plaintiff thereafter sought review in this Court, and the Court

remanded the case for further proceedings in a Memorandum and Order dated March 8, 2022.  (Tr.

1366-77).  Following two additional hearings, the ALJ issued a second unfavorable decision

finding that Plaintiff was not under a disability as defined in the Act, which became the final

decision of the Agency.  (Tr. 1269-83).  Plaintiff's case is again before this Court, and there is no

dispute that Plaintiff has exhausted his administrative remedies.

In this action for judicial review, Plaintiff claims the ALJ committed reversible errors in

his decision.  Plaintiff requests that the Commissioner's decision be reversed, and the matter

remanded for an award of benefits or for further evaluation.  (Doc. 18).

## II.  Legal Standard

To be eligible for benefits under the Act, a Plaintiff must prove he is disabled.  *Pearsall v.*

*Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Sec'y of Health & Hum. Servs.*, 955

F.2d 552, 555 (8th Cir. 1992).  The Act defines disability as the "inability to engage in any

substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be expected to last

for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

An  individual  will  be  declared  disabled  "only  if  his  physical  or mental

impairment or impairments are of such severity that he is not only unable to do his previous work

2

but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The Commissioner begins by deciding whether the claimant is engaged in substantial gainful activity. If the claimant is working, disability benefits are denied. Second, the Commissioner decides whether the claimant has a "severe" impairment or combination of impairments, meaning that which significantly limits his ability to do basic work activities. If the claimant's impairment is not severe, then he or she is not disabled. Third, if the claimant has a severe impairment, the Commissioner considers the impairment's medical severity. If the impairment meets or equals one of the presumptively disabling impairments listed in 20 C.F.R., Part 404, Subpart P, Appendix 1, the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), (d).

At the fourth step, if the claimant's impairment is severe but does not meet or equal one of the presumptively disabling impairments, the Commissioner assesses whether the claimant retains the residual functional capacity ("RFC") to perform his past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(5)(i). An RFC is "defined as the most a claimant can still do despite his or her physical or mental limitations." *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011); *see also* 20 C.F.R. § 416.945(a)(1). Ultimately, the claimant is responsible for providing evidence relating to his RFC, and the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own

3

medical sources." 20 C.F.R. § 416.945(a)(3).  If, upon the findings of the ALJ, it is determined the claimant retains the RFC to perform past relevant work, he is not disabled.  20 C.F.R. § 416.920(a)(4)(iv).

In the fifth step, the Commissioner evaluates various factors to determine whether the claimant is capable of performing any other work in the economy.  If the claimant's RFC does not allow the claimant to perform past relevant work, the burden of production shifts to the Commissioner to show the claimant maintains the RFC to perform work that exists in significant numbers in the national economy.  *See Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. § 416.920(a)(4)(v).  If the claimant can make an adjustment to other work which exists in significant numbers in the national economy, the Commissioner finds the claimant not disabled.  20 C.F.R. § 416.920(a)(4)(v).  If the claimant cannot make an adjustment to other work, the Commissioner finds the claimant disabled.  *Id.*  In the fifth step, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant.  *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016).

The decision of the Commissioner must be affirmed if it is supported by substantial evidence on the record as a whole.  42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002).  Substantial evidence is less than a preponderance but enough that a reasonable person would find it adequate to support the conclusion.  *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001).  The "substantial evidence test," however, is "more than a mere search of the record for evidence supporting the Commissioner's findings."  *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) (internal quotation marks and citation omitted).  "Substantial evidence on the record as a whole … requires a more scrutinizing analysis."  *Id.* (internal quotation marks and citations omitted).  Under this test,

the Court "consider[s] all evidence in the record, whether it supports or detracts from the ALJ's

decision." *Reece v. Colvin*, 834 F.3d 904, 908 (8th Cir. 2016).  The Court "do[es] not reweigh the

evidence presented to the ALJ" and will "defer to the ALJ's determinations regarding the

credibility of testimony, as long as those determinations are supported by good reasons and

substantial evidence." *Id.*  The ALJ will not be "reverse[d] merely because substantial evidence

also exists in the record that would have supported a contrary outcome, or because [the Court]

would have decided the case differently." *KKC ex rel. Stoner v. Colvin*, 818 F.3d 364, 370 (8th

Cir. 2016).

### III.  The ALJ's Decision

In a decision dated July 6, 2023, the ALJ applied the above five-step analysis and found

Plaintiff had not engaged in substantial gainful activity since the period from his alleged onset date

of August 30, 2017, through August 1, 2020, when he was granted benefits in separate

administrative proceedings.  The ALJ found that Plaintiff has the severe impairments of

degenerative disc disease of the cervical, lumbar, and thoracic spine and status post-operative

arthroscopic chondroplasty of the right knee.  The ALJ determined Plaintiff did not have an

impairment or combination of impairments that meets or medically equals the severity of one of

the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1.  (Tr. 1270, 1272-76).

As for Plaintiff's RFC, the ALJ found Plaintiff retained the ability to perform light work,

but that he had the following additional limitations:

> [C]laimant can exert twenty pounds of force occasionally and ten pounds of force
> frequently.  The claimant can sit, stand, and walk for up to six hours in an eight-
> hour workday with normal breaks. The claimant requires a sit-to-stand option,
> defined as allowing the claimant to alternate between sitting and standing positions
> at intervals no more often than 30 minutes at a time while remaining on task.  The
> claimant can never climb ladders, ropes, and scaffolds, never crawl, and never
> balance as defined in the Selected Characteristics of Occupations.  The claimant
> can occasionally climb ramps and stairs and occasionally stoop, kneel, and crouch.

5

The claimant can frequently reach, handle, finger, and feel. The claimant should avoid concentrated exposure to excessive vibration and avoid all exposure to workplace hazards such as operational control of moving machinery, moving mechanical parts and unprotected heights.

(Tr. 1276-81).

At the fourth step, the ALJ found Plaintiff was unable to perform his past relevant work as a carpenter, but found at step five that, based on Plaintiff's age, education, and work experience, there were other jobs in the national economy that he was capable of performing, including production assembler, assembler, and routing clerk. [2] (Tr. 1281-82).

## IV. Discussion

In support of his request for reversal and remand, Plaintiff argues that the ALJ's decision failed to properly evaluate medical opinion evidence; namely, the medical opinions of agency provider, Dr. Renu Dubroy, and Plaintiff's treating physician, Dr. Kelly Bain. Plaintiff further argues that the ALJ's RFC determination is not supported by substantial evidence, because the ALJ improperly relied on his own interpretation of the medical evidence of record in determining Plaintiff's functional limitations. Finally, Plaintiff argues that the ALJ's decision fails to evaluate Plaintiff's subjective complaints of pain. (Doc. 18). Plaintiff's arguments center around his perceived failure of the ALJ to include appropriate lifting, carrying, and overhead reaching limitations in the RFC assessment.[3]

Plaintiff's medical records reveal that during the relevant time period he reported ongoing symptoms of chronic cervical pain to his healthcare providers, and he made ongoing efforts to

---

[2] Of note, the vocational expert at the latest administrative hearing explained that if a hypothetical individual's abilities in reaching, handling, or fingering, in any combination were limited, this would effectively preclude the jobs identified, as well as any other job that exists in significant numbers in the national economy. (Tr. 1321-22).

[3] This matter was previously remanded based on a finding that the record did not reveal substantial evidence supporting the ALJ's conclusions that Plaintiff could lift 20 pounds and reach overhead frequently. (Tr. 1376-77).

control his pain through medication management, which included the daily use of pain relievers such as Percocet and Oxycodone.  Based on diagnostic test findings, Plaintiff has been diagnosed with congenital abnormal fusion of arch of cervical vertebra, degeneration of cervical intervertebral disc, and degenerative disc disease.  In addition, multiple healthcare providers have on numerous occasions documented Plaintiff's limited range of cervical motion.   (Tr. 10-11, 25, 38-39, 62-63, 68, 72-73, 77-79, 166, 168, 706, 850-51, 1187-90, 1200, 1208, 1217-1219, 1226, 1252-54, 1714, 1774-75).  Plaintiff's most recent MRI of the cervical spine in April 2020 indicated the following:  "[c]ongenital fusion anomalies are again noted in cervical spine," "[d]egenerative endplate changes noted in most pronounced at C3-4," "[t]here is degenerative loss of disc space height and signal," "[d]isc herniations are noted at the remaining levels in the cervical spine at C3-4 and C5-6," "[t]here is moderate to severe spinal canal stenosis at C3-4 with moderate spinal canal stenosis at C5-6," "[m]oderate left neural foraminal narrowing at C2-3 and likely at C3-4," and "[m]oderate left neural foraminal stenosis at C5-6."  (Tr. 1774-75).

The record contains three medical opinions regarding Plaintiff's physical limitations.   In a March 10, 2018 consultative exam with Dr. Raymond Leung, Dr. Leung observed that Plaintiff had "decreased range of motion in the cervical spine."  (Tr. 1186-1190).  In a March 28, 2018 assessment, Dr. Dubroy indicated that Plaintiff had exertional and manipulative limitations, including a limited ability to reach overhead, and an inability to lift and/or carry more than 10 pounds, both occasionally and frequently. (Doc. 165-170).  In an Upper Extremities Impairments Questionnaire dated June 24, 2019, Dr. Bain indicated that Plaintiff could occasionally lift and carry 10 to 15 pounds, and that he could frequently carry 10 pounds.  Dr. Bain also indicated that Plaintiff was limited in his ability to reach in all directions to less than two hours in an eight-hour

7

workday, and she further stated: "[s]evere limitation ROM neck + pain related to cervical disc

disease + spinal stenosis." (Tr. 1262-64).

In fashioning Plaintiff's RFC, the ALJ concluded that the evidence of record was

insufficient to support the extent of limitations alleged or preclude work at the light exertional

level, reasoning as follows:

> [Plaintiff's] physical examinations otherwise revealed no significant abnormalities
> and the claimant ambulated normally without the use of an assistive device, was
> able to get on and off the examination table, and perform toe walk, heel walk, hop,
> and tandem gait exercises, satisfactorily (Exhibit B21F/4; see also Exhibits
> B20F/15-16 & B29F/51, 70, 78). In addition, the claimant's range of motion of the
> shoulders, elbows, wrists, hands, hips, knees, ankle/foot were within normal limits
> in all axes, manual motor strength testing including pinch and grip strength was
> graded 4+ and/or 5/5 in all muscle groups without evidence of atrophy,
> fasciculations, tremors, or spasticity, sensation was intact to pinprick, touch, and
> vibratory in all dermatomal distributions, and deep tendon reflexes were full and
> symmetric in biceps, brachioradialis, triceps, patellar, and ankle distribution
> (Exhibits B20F/15-16, 20; B21F/4; B22F/2; B24F/2-3; B25F/3; B28F/3, 26 &
> B29F/51, 70-71, 78).
>
> Similarly, the claimant's straight-leg raise was asymptomatic or negative bilaterally
> on provocative testing and all other extremity joints were unremarkable for
> crepitus, effusion, erythema, paraspinal tenderness, peripheral edema, ulcerative
> lesions, varicosities, or other deformity (See Exhibits B20F/15; B21F/4; B22F/2;
> B25F/3; B28F/3 & B29F/70). Moreover, CT, MRI, and other radiographic imaging
> scans of the claimant's cervical, lumbar, and thoracic spine were otherwise
> unremarkable and did not detect or identify evidence of cord signal abnormality,
> compression of the conus or spinal nerve roots, compromise of the cauda equina,
> significant or "high-grade" central canal stenosis or spinal stenosis, or other acute
> pathology involving the cervical, lumbar, or thoracic spine (See Exhibits B20F/16-
> 17; B22F/4; B25F/29, 32; B27F/14 & B29F/50, 111). Correspondingly, an EMG
> and nerve conduction velocity (NCV) study conducted on April 13, 2020, was
> unremarkable and did not detect or otherwise identify electrodiagnostic evidence
> suggestive of cervical or lumbosacral radiculopathy, generalized peripheral
> neuropathy, acute denervation of the myotomes, plexopathy, myopathy, or
> neuropathic process involving the upper and/or lower extremities (Exhibit
> B29F/89-91).

(Tr. 1277-78).    Based on similar reasoning, the ALJ discounted Dr. Dubroy and Dr. Bain's opinions with respect to Plaintiff's abilities to lift, carry, and reach, and declined to adopt such exertional and manipulative limitations.  (Tr. 1279-81).

Plaintiff urges that the ALJ improperly interpreted the findings documented in Plaintiff's diagnostic testing results and various physical examinations throughout the record in determining he could exert 20 pounds of force occasionally and reach frequently.  Plaintiff suggests that, in doing so, the ALJ largely relied on unremarkable exam findings of Plaintiff's upper and lower extremities, which are not inconsistent with his allegations of pain in his neck and limited range of cervical motion.  This Court tends to agree.

A claimant's RFC is the most he can do despite his limitations, and an ALJ must assess it based on all relevant evidence in the claimant's case record.  20 C.F.R. § 404.1545(a)(1).  Relevant evidence includes "'medical records, observations of treating physicians and others, and an individual's own description of his limitations.'"  *Hensley*, 829 F.3d at 932 (quoting *Myers v. Colvin*, 721 F.3d 521, 527 (8th Cir. 2013)).  Because a claimant's RFC is a medical question, an ALJ's RFC determination "'must be supported by some medical evidence of the claimant's ability to function in the workplace.'"  *Id.* (quoting *Cox v. Astrue,* 495 F.3d 614, 619 (8th Cir. 2007)).  In assessing a claimant's RFC, an ALJ may not "draw improper inferences from the record or substitute a doctor's opinion for his own."  *Kribble v. Kijakazi*, 663 F. Supp. 3d 1016, 1027 (E.D. Mo. 2023) (quotation and citation omitted).  Similarly, an ALJ "may not simply draw his own inferences about [a claimant's] functional ability from medical reports."  *Combs v. Berryhill*, 878 F.3d 642, 646 (8th Cir. 2017) (quotation omitted).

The Court concludes that the ALJ improperly inferred functional limitations related to Plaintiff's abilities to lift, carry, and reach overhead from the ALJ's own interpretation of physical

9

examination findings and diagnostic test results set forth in the medical record.  The Court initially notes that the ALJ's decision tends to suggest Plaintiff's medical records reveal largely unremarkable findings.  The decision, however, excludes discussion of the findings from many of Plaintiff's physical examinations and diagnostic tests which demonstrate Plaintiff's history of degenerative disc disease and congenital deformity, his reported symptoms of pain in the cervical region, and his limited range of cervical motion.  "While a deficiency in opinion-writing is not a sufficient reason to set aside an ALJ's finding where the deficiency has no practical effect on the outcome of the case, inaccuracies, incomplete analyses and unresolved conflicts of evidence can serve as a basis for remand."  *Draper v. Barnhart*, 425 F.3d 1127, 1130 (8th Cir. 2005) (cleaned up).  *See also Bossio-Haines v. Kijakazi*, No. 4:22-CV-1335 SRW, 2023 WL 6846968, at *5 (E.D. Mo. Oct. 17, 2023) (an ALJ has "the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding").

Upon review of the record, the Court does not find substantial evidence to support the ALJ's assessment of Plaintiff's RFC as it relates to the Plaintiff's abilities to lift, carry, and reach overhead.  The three medical opinions of record suggest that Plaintiff cannot lift or carry more than 15 pounds and that he has limitations in reaching overhead.  Although there is no requirement than an RFC finding "be supported by a specific medical opinion," *Hensley*, 829 F.3d at 932, it is unclear here how the ALJ determined Plaintiff was capable of performing the lifting and carrying requirements of light work and frequently reaching overhead.  The Court finds the Eighth Circuit's decision in *Noerper v. Saul* particularly instructive:

> At the end of the day, although most of the record can properly be characterized as mixed—which normally would require that we affirm under the substantial evidence standard—we agree with Noerper that the record is fatally lacking in one respect.  There is simply no reliable evidence providing a basis for the specific

conclusion that Noerper can stand or walk for 6 hours in an 8-hour workday.  In reaching this result, we do not suggest that an ALJ must in all instances obtain from medical professionals a functional description that wholly connects the dots between the severity of pain and the precise limits on a claimant's functionality. Something, however, is needed."

*Noerper v. Saul*, 964, F.3d 738, 746-47 (8th Cir. 2020) (citation omitted).  Similar to *Noerper*, something more is needed here.  It is not apparent to the Court how, or whether, the physical examination findings and diagnostic test results identified by the ALJ translate into the lifting, carrying, and reaching overhead limitations set forth in the RFC assessment.[4]

The Court will therefore remand this case to the ALJ for further proceedings.  The Court declines to address in depth the issues of whether the ALJ adequately evaluated Dr. Dubroy or Dr. Bain's medical opinions or Plaintiff's subjective complaints of pain. The ALJ will, however, necessarily need to reconsider these issues to some extent in reassessing Plaintiff's RFC on remand.  *See Noerper*, 964 F.3d at 747 ("the duty to develop the record arises from the simple fact that the disability determination process is not an adversarial process").

## V.  Conclusion

In light of the remand and reevaluation of Plaintiff's physical RFC, the ALJ shall likewise reevaluate the medical opinions of record in accordance with 20 C.F.R. § 404.1520(c), as well as Plaintiff's credibility in accordance with Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984).

---

[4] To the extent the ALJ briefly considered Plaintiff's course of treatment and found it to be conservative based on Plaintiff's decisions to not proceed with physical therapy or undergo surgical management, this alone does not constitute substantial evidence to support the RFC assessment. *See Ray v. O'Malley*, No. 1:23-CV-00074-SPM, 2024 WL 4298540, at *6 (E.D. Mo. Sept. 26, 2024).  The Court also considered the Commissioner's argument pertaining to Plaintiff's daily activities.  However, the ALJ did not discuss these activities in the RFC assessment; it is unclear to the Court how these activities, without additional context, demonstrate Plaintiff's ability to meet the exertional and manipulative limitations at issue; and the Commissioner's assertion that Plaintiff engaged in skeet shooting during the relevant time period is not supported by the record.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **REVERSED,** and

the matter **REMANDED** for further proceedings consistent with this opinion.

A separate judgment shall accompany this Memorandum and Order.

Dated this 24th day of March, 2025.


_____
HENRY EDWARD. AUTREY
UNITED STATES DISTRICT JUDGE